COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-04-543-CR

 

 

JOHN CARLOS RIOS                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                            Introduction

Appellant John Carlos Rios
appeals from his conviction and life sentence for capital murder.  In two points, he argues that the trial court
erred by charging the jury on the law of parties and by failing to instruct the
jury on the law of accomplice witness testimony.  We affirm.








                                            Background

Appellant was convicted for
the murders of Ramon Perez and Cleaudrey Tarleton, who were killed by two shots
fired during a drive-by shooting in Rosemont Park in Fort Worth.  Appellant does not complain of the
sufficiency of the evidence.  We will
therefore review only the evidence necessary to put his charge-error complaints
into context.

Appellant and his companions,
Pedro Torres, Victor Sanchez, and Emmanuel Flores, had a fistfight with members
of a street gang at Rosemont Park.  After
a bystander broke up the fight by knocking Appellant down, Appellant left the
park in a car with his companions. 

Torres was a key witness for
the State at Appellant=s trial.  Torres testified that he met Appellant for
the first time shortly before the fistfight in the park.  When he, Sanchez, Flores, and Appellant left
the park, Appellant directed Sanchez to drive to a nearby house.  Torres testified that once there, Appellant
went into the house and returned with a shotgun wrapped in a blanket, which he
placed on the back seat floorboard.  He
then directed Sanchez to drive back to the park.  According to Torres, Torres and Appellant
were in the back seat of the car; Appellant was sitting behind the driver.   








Torres testified that when
they arrived at the park, Appellant spoke to a woman through the car=s rear passenger-side window and asked where were the people with whom
he had fought earlier.  The woman pointed
to a group of people, and Appellant said, A[Y]ou better get out of here. 
It is fixing to go down.@  Torres testified that he heard
a gunshot as Sanchez drove the car forward. 
Torres said that he did not see Appellant fire the shot, but turned in
time to see Appellant lowering the shotgun. 
Sanchez tried to drive away but was blocked by another car.  According to Torres, Appellant then fired
another shot.  Torres testified that
Appellant fired both shots.  Torres saw
two people fall over Alike
dominoes.@  Sanchez drove the car over the curb, out of
the parking lot, and away from the park. 
Torres testified that Appellant instructed Sanchez to drop Appellant off
at the house where he had obtained the shotgun, and Sanchez complied. 








Other witnesses tied
Appellant to the shooting as the primary actor. 
Michael Apodaca identified Appellant as the person involved in the
earlier fistfight at the park and the person holding the shotgun when the fatal
shots were fired.  Ruben Holguin
testified that he was speaking to one of the victims when the first shot rang out.  He looked at the car from which the shot was
fired and saw the driver=s-side,
rear-seat passenger reload a shotgun and point it out the car=s window.  Lydia Mariscal
testified that she witnessed the earlier fistfight and, immediately before the
shooting, she spoke with the driver of the vehicle from which the shot was
fired.  Though she was unable to identify
Appellant in the courtroom, she said that she saw the man who had been hurt in
the fistfight sitting in the driver=s-side rear-passenger seat of the vehicle and that he was holding what
looked like a pole between his legs.  The
State offered into evidence a photograph of Appellant from a photo lineup on
which Mariscal had written on the morning following the shooting, AThis look[s] like the guy I saw with the gun!  I am pretty sure I saw this look[s] like the
guy with the gun.@ 

Bridgette Sosa testified that
she was sitting in a car behind Appellant=s car at the time of the shooting. 
She said that the shots were fired from the Amiddle@ of the back
seat out the driver=s-side rear
window.  Sosa testified that there were
four or five people in Appellant=s car.  Sosa admitted on
cross-examination that she had previously told Appellant=s counsel that she thought another man, whose description did not
match that of Appellant, fired the fatal shots.[2]









The trial court charged the
jury on the law of parties.  When
Appellant objected that the evidence did not raise the law of parties, the
State argued that Sosa=s testimony
raised the possibility that another passenger in the car fired the shots, but
that Appellant=s role in
procuring the murder weapon nonetheless made him a party to the offense.  The trial court agreed and overruled
Appellant=s objection.


Appellant then requested an
instruction on accomplice witness testimony, arguing that if the evidence
raised the possibility that Appellant was a party to the offense, it also
raised the possibility that the State=s key witness, Pedro Torres, was the primary actor and therefore an
accomplice.  The State replied that there
was no evidence to suggest that Torres had any role in the killings other than
his mere presence in the vehicle, and that Sosa=s testimony pointed to neither Appellant nor Torres but some other
person as the principal actor. The trial court denied Appellant=s request. 

The jury found Appellant
guilty of capital murder; the State having waived the death penalty, the trial
court sentenced him to life imprisonment. 

                                       Standard
of Review

 

Both of Appellant=s points assert error in the jury charge.  Appellate review of error in a jury charge
involves a two-step process.  Abdnor
v. State, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id.

 

 








                                           Law of Parties

In his first point, Appellant
argues that the trial court erred by charging the jury on the law of
parties.  Under the law of parties, a
person is criminally responsible as a party to an offense if the offense is committed
by his own conduct, by the conduct of another for which he is criminally
responsible, or by both.  Tex. Penal Code Ann. ' 7.01(a) (Vernon 2003).  A
person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Id.
' 7.02(a)(2).  Each party to an
offense may be charged with commission of the offense.  Id. ' 7.01(b).

In this case, most of the
evidence pointed to Appellant as the shooter. 
But Sosa=s testimony
raised the possibility that another occupant of the vehicle fired the fatal
shots.  Even if Appellant did not pull
the trigger, Torres testified that Appellant played a pivotal role in the
killings by directing the driver of the car to the house where Appellant
obtained the shotgun and then directing the driver to return to the park.  As such, the evidence raised the possibility
that Appellant, acting with the requisite intent, aided in the offense by
providing the murder weapon.  We
therefore hold that the trial court did not err by charging the jury on the law
of parties.








                               Accomplice Witness Instruction

In his second point,
Appellant argues that the trial court erred by failing to charge the jury on
the law of accomplice witness testimony. 
Appellant requested the following instruction at trial:

You
are instructed that the witness, Pedro Torres, [] is an accomplice as a matter
of fact, or as a matter of law, if an offense was committed and you cannot
convict the Defendant upon his testimony, unless you first believe that his
testimony is true and shows the Defendant is guilty of an offense listed above,
which would be the offense in the charge, and that you cannot convict the
Defendant upon their said testimony, unless you [] further believe that there
is other evidence in the case outside of the evidence of [] Pedro Torres,
tending to connect the Defendant with the offense committed, if you find that
an offense was committed.  And the
corroboration is not sufficient because if it merely shows the commission of
the offense, but it must also tend to connect the Defendant with its
commission, and then from all of the evidence you must believe beyond a
reasonable doubt that the Defendant is guilty of an offense charged against
him. 

 








Article 38.14 of the code of
criminal of procedure provides that A[a] conviction cannot be had upon the testimony of an accomplice
unless corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.@  Tex. Code Crim. Proc. Ann art. 38.14 (Vernon 2005).  The test is whether, after excluding the
accomplice=s testimony,
there is other evidence of an incriminating character which tends to connect
the defendant with the commission of the offense.  Burks v. State, 876 S.W.2d 877,
887 (Tex. Crim. App. 1994); Munoz v. State, 853 S.W.2d 558, 559 (Tex.
Crim. App. 1993).

A person is an accomplice if
he participates with the defendant before, during, or after the commission of a
crime with the required culpable mental state. 
Paredes v. State, 129 S.W.3d 530, 536 (Tex. Crim. App.
2004).  The participation must involve an
affirmative act that promoted the commission of the offense with which the
accused is charged.  Id.  Mere presence during the commission of the
crime, knowledge about the crime and failure to disclose it, or even
concealment of the crime is not sufficient to render a person an
accomplice.  Medina v. State, 7
S.W.3d 633, 641 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102
(2000).  An accomplice as a matter of law
is one who is susceptible to prosecution for the offense with which the accused
is charged or a lesser included offense. 
Paredes, 129 S.W.3d at 536.

The trial court is under no
duty to instruct the jury regarding accomplice witnesses unless there exists no
doubt or the evidence clearly shows that a witness is an accomplice as a matter
of law.  Id.  If the evidence presented by the parties
conflicts concerning whether the witness is an accomplice, then the trial court
must leave to the jury the question of whether the inculpatory witness is an
accomplice as a matter of fact under instructions defining the term Aaccomplice.@  Id.








Appellant argues that Torres
was an accomplice to the crime because Athere were affirmative acts and omissions on his part from which the
jury could have concluded that he helped to facilitate the offense.@  The Aacts and omissions@ Appellant points to include Torres=s admissions that he Athrew gang signs@ at the
people with whom Appellant fought, that he was in the back seat of the car at
the time of the shooting, that he Afigured out what was going on@ when he saw Appellant return from a house with the blanket-wrapped
gun but did nothing to prevent the others in the car from returning to the
park, that he did nothing to stop the shooting despite knowing what was about
to happen when Appellant said to a bystander, A[Y]ou better get out of here. 
It is fixing to go down,@ and that he withheld from police information about the location of
the house from which Appellant obtained the gun. 








These facts amount to nothing
more than mere presence during the commission of the crime, knowledge about the
crime and failure to disclose it, and concealment of the crime and are not
sufficient to render Torres an accomplice. 
See Medina, 7 S.W.3d at 641.  There is no evidence that Torres committed an
affirmative act that promoted the commission of the double murder.  See Paredes, 129 S.W.3d at
536.  Because there is no evidence
showing Torres was an accomplice, the trial court did not err by refusing to
submit the accomplice witness instruction to the jury.  We overrule Appellant=s second point.

                                             Conclusion

Having overruled both of
Appellant=s points, we
affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 27, 2006











[1]See Tex. R. App. P. 47.4.





[2]During
the charge conference the State argued to the trial court that Sosa=s
description of the possible shooter did not match Torres, either.